### MOTTS v. MICHIGAN CAB CO.

1. DAMAGES—FUTURE PAIN AND SUFFERING.

   In trial of action by passenger for hire injured in collision between defendant's taxicabs, which was held nine months after injuries were sustained, submission of question of future damages to jury *held,* not error under pleading, evidence of condition and appearance of plaintiff at trial.

2. SAME—TRIAL—INSTRUCTIONS—FUTURE PAIN AND SUFFERING— "IN ALL PROBABILITY."

   In instructions to jury as to damages, term "in all probability," used with reference to future pain and suffering of plaintiff passenger for hire who, after nine months, had not fully recovered from injuries received in collision between defendant's taxicabs, is construed as meaning "reasonable certainty" and, so construed, *held,* not error.

3. APPEAL AND ERROR—DAMAGES—LOSS OF EARNINGS—INSTRUC-
TIONS.

When employer pays salary or wages of an injured person during
time he is unable to work by reason of injuries inflicted by
tortfeasor, such payment is no ground for mitigation or diminu-
tion of damages to be paid by tortfeasor, hence instruction that
requires finding that payment by employer was a gratuity was
more favorable than that to which defendant was entitled.

4. DAMAGES—EXCESSIVE VERDICT.

Verdict of $1,500 for passenger for hire whose salary was $40
a week, injured when defendant's taxicabs collided, *held*, not
excessive under evidence presented in trial nine months after
accident that he still has pain at times in his arm, shoulder and
collar bone and that nervousness would continue for some time.

Appeal from Kalamazoo; Weimer (George V.), J.
Submitted October 18, 1935. (Docket No. 121, Cal-
endar No. 38,543.) Decided January 31, 1936.

Case by Clyde E. Motts against the Michigan Cab
Company, a Michigan corporation, for personal in-
juries sustained while riding as a passenger for hire
in one of defendant's taxicabs when it collided with
another of its taxicabs. Verdict and judgment for
plaintiff. Defendant appeals. Affirmed.

*Fred A. Mills,* for plaintiff.

*Mason & Sharpe,* for defendant.

TOY, J. Plaintiff brought this suit to recover
damages for personal injuries which he sustained
while riding as a passenger for hire in defendant's
taxicab in the city of Kalamazoo, when such cab was
struck by another cab of defendant.

At the trial below the defendant conceded that it
was negligent in the operation of its taxicab, and

that plaintiff received his injuries by reason of that negligence. The case was submitted to the jury on the question of damages, and a verdict was returned fixing the damages at $1,500, followed by entry of judgment in that amount. After denial of defendant's motion for a new trial, it appealed.

Defendant here contends that the trial court was in error, first, in leaving to the jury in any way the question of future damages; second, in the instruction given the jury in that regard; third, in not instructing the jury, as requested by defendant, that there could be no recovery for plaintiff based on any claim of loss of earnings; fourth, that the damages awarded were excessive.

On the matter of claim for future damages, plaintiff alleged in his declaration that:

"Plaintiff has not fully recovered from his said injuries herein complained of and still feels the effects of the same; plaintiff's right arm and shoulder and collar bone at times cause him pain; plaintiff's right arm is not yet normal in strength, and plaintiff has to favor same, and at times plaintiff suffers pain in his right shoulder and is unable to secure his proper sleep and rest by reason thereof, and this plaintiff verily believes that said injuries may continue to cause him pain and suffering, and inconvenience for a long time hereafter."

The record discloses testimony that plaintiff still has pains in his arm and shoulder and around his neck; that he cannot sleep; that he perspires violently without exertion; that he complains of marked exhaustion and shortness of breath; that he is "apt to have pain at intervals at least for some time yet;" that he "will continue to be nervous for some time;" and that his "nervousness would interfere

with his future happiness and being able to do his work." In addition, plaintiff testified:

"I was just physically fit before I got hurt. Since then, I haven't been any good. I was a strong and healthy man before this accident, take on any of you. I had never been sick."

The accident occurred March 12, 1934. Trial was had December 11th of the same year. The trial court, in his opinion denying defendant's motion for a new trial, stated:

"Upon the trial, * * * plaintiff was still in an unmistakable and pitiable condition of severe nervous shock. His appearance, his testimony and that of the medical witnesses left no room for doubt that he would continue to suffer from the effects of the accident for a considerable time thereafter, perhaps indefinitely. Plaintiff was then manifestly unable and unfit to pursue his regular vocation, or to enjoy normal living in any considerable measure."

It seems plain to us that, under the allegations of plaintiff's declaration, as above quoted, and the testimony hereinbefore outlined regarding plaintiff's condition, together with his appearance at the time of the trial, as observed by the trial judge, the trial court was not in error in leaving to the jury the question of future damages.

Defendant contends that the trial court erred in its charge to the jury in respect to future damages. The court charged:

"You should award him such an amount as you in your honest, candid judgment find will fairly and justly compensate him for all pain, suffering and shock that you find he has endured, and which, if any, you find he in all probability will endure in the future as a result of this accident.

"The burden of proof is upon the plaintiff, of course. He brings the action and he must satisfy

you by a preponderance of the evidence as to the nature and character and extent of his pain and suffering.''

Defendant complains that the use, by the trial judge, of the term ''in all probability'' in the portion of the charge above quoted, was error.

Counsel for both parties have evidently overlooked the holding of this court in the case of *King* v. *Neller*, 228 Mich. 15, for it is not cited nor discussed in their briefs. In that case, exception had been taken to the charge of the trial court, which read:

''If you believe from the evidence in the case that in all probability she (plaintiff) will in the future suffer pain, you may award her the present worth of such amount as will fairly and justly compensate her for this future pain and suffering.''

In sustaining such charge, this court said:

''The words 'in all probability' are criticized, and it is said that only such future damages can be recovered as the evidence makes reasonably certain will necessarily result from the injury sustained, that there must be reasonable certainty of future consequences of the injury as distinguished from reasonable probability; citing, *Matthews* v. *Lamberton*, 184 Mich. 493; *Brininstool* v. *Railways Co.*, 157 Mich. 172; *Kethledge* v. *City of Petoskey*, 179 Mich. 301. 'In all probability' means more than reasonable probability. It is equivalent to reasonable certainty. It describes the highest degree of probability. It has practically the same meaning as 'in all likelihood,' which has been held equivalent to reasonable certainty. *Ballard* v. *Kansas City*, 110 Mo. App. 391 (86 S. W. 479); 31 C. J. p. 363; 2 Words and Phrases (2d Series), 984.''

In the case of *Coppinger* v. *Broderick*, 37 Ariz. 473 (295 Pac. 780, 81 A. L. R. 419), the court, after

quoting with approval the above quoted language of this court in *King* v. *Neller, supra,* further comments:

"After all, in its final analysis the rule is but a monition to the jury. The common sense, experience, and conscience of the jury, if responsive, will guide it to the same end, whether it is told that it must be reasonably certain of future pain and suffering or satisfied that in all probability or likelihood future pain and suffering will ensue."

We hold, therefore, that the trial court was not in error in giving the charge above referred to.

Defendant asks the question: Can there be recovery for loss of earnings in the case where an employer continues salary payments, under agreement with the employee to repay the employer in event of recovery?

The plaintiff testified:

"They (his employers) told me they wouldn't pay me for the time I was off and then they revised that and said they would provided I would pay them back in case I was reimbursed. * * *

"I was away from my work for six weeks. During that period of six weeks, my company continued to pay my regular salary. I had some verbal understanding with my company or someone connected with my company, that if I were permitted to recover these wages, I would pay them back to the company. I am paid at the rate of $40 per week and get my pay twice a month."

The trial judge submitted the question of the right of plaintiff to recover for such earnings to the jury under his charge, as follows:

"If his (plaintiff's) company paid him a salary for services rendered, if the plaintiff had received a salary from his company for services rendered,

then he is not entitled to recover for lost earnings. There can be no recovery by plaintiff for lost earnings, or loss of earnings during the period of his disability, unless you find by a preponderance of the evidence that the salary payments made him by his employer and covering the period of his disability were gratuities, a mere gift. If his company, if his employer made payments to him as a pure gratuity, as a gift, then such payments would not bar the right of plaintiff to recover in this action for lost earnings.''

We think our decision must turn on whether the recovery of loss of earnings from a tortfeasor defendant is barred or affected by the receipt by plaintiff, from his employer, of wages or salary during the period in which he was unable to work owing to the injuries suffered from the accident.

The courts of the various States are not in accord on the question.

In New York and Alabama, the view is held that if the plaintiff received his wages from his employer, he could not recover therefor from the tortfeasor. *Drinkwater* v. *Dinsmore,* 80 N. Y. 390 (36 Am. Rep. 624); *Travis* v. *Louisville & Nashville Railroad Co.,* 183 Ala. 415 (62 South. 851).

In Pennsylvania and Missouri the rule entitles plaintiff to recover compensation for loss of earnings from a tortfeasor only in case payment by the employer is gratuitous. *Quigley* v. *Pennsylvania Railroad Co.,* 210 Pa. 162 (59 Atl. 958); *Moon* v. *St. Louis Transit Co.,* 247 Mo. 227 (152 S. W. 303); *Ephland* v. *Railway Co.,* 57 Mo. App. 147.

The prevailing doctrine in this country, however, is that when the salary or wages of an injured person is paid by his employer during the time he is unable to perform services by reason of his injuries, that such payment is no ground for mitigation or

diminution of the damages to be paid by one who caused the injury. *Cunnien* v. *Superior Iron Works Co.*, 175 Wis. 172 (184 N. W. 767, 18 A. L. R. 667). See, also, the annotation thereto in 18 A. L. R. 678 *et seq.*, where the authorities are collected and digested.

This doctrine is evidently analogous to that followed generally throughout the courts of this country, that a recovery of damages for loss, injury or death, from a tortfeasor, is not barred by the receipt by the injured or his beneficiaries of money paid by an insurance company on an insurance policy for the same respective loss, injury or death.

In *Roth* v. *Chatlos*, 97 Conn. 282 (116 Atl. 332, 22 A. L. R. 1554), the court said:

"Evidence was also excluded, and properly, that the plaintiff was insured against loss from the payment of a hospital bill incurred in the effort to cure the injuries suffered through the negligence of defendant.

"The authorities, both numerically and in weight, agree that a defendant owes to the injured compensation for injuries the proximate cause of which was his own negligence, and that their payment by third parties cannot relieve him of this obligation, and that, whether the motive impelling their payment be affection, philanthropy, or contract, the injured is the beneficiary of their bounty and not him who caused the injury. In short, the defendant has no equitable or legal claim to share in the amount paid for the plaintiff. The majority rule of the cases is that an injured person is entitled to recover as damages for reasonable medical, hospital, or nursing services rendered him, whether these are rendered him gratuitously or paid for by his employer. Such service or such payment is for the benefit of the injured person. It is a gift to him. But since it is one of the elements of injury, he is entitled to re-

cover the reasonable value of the service.'' (Citing many cases.)

In *Campbell* v. *Sutliff*, 193 Wis. 370 (214 N. W. 374, 53 A. L. R. 771), the plaintiff had suffered injury through the negligence of another, and had been paid his regular salary by his employer during the period of his disability; he had also received a payment under an accident insurance policy that he had taken out. The court said:

''We see no reason why one whose acts have caused injury to another should reap the entire benefit that comes from the payment of wages made by an employer, either as a gratuity to a faithful employee or because such payments are required by contract. Such payments do not change the nature of the injury which the employee sustains through the wrongful acts of the tortfeasor. If either is to profit by the payments made by the employer, it should be the person who has been injured—not the one whose wrongful acts caused the injury. The extent of the liability of the wrongdoer is dependent upon the extent of the injuries inflicted by his wrongful act, not upon the question whether the employee receives wages during disability from his employer.

''It is equally clear that the defendant is not entitled to have the damages reduced because the plaintiff had purchased and paid for the right to have indemnity in case he sustained accidental injuries. The sums paid for such insurance are in the nature of an investment, which, like other investments made by the plaintiff, ought not to inure to the benefit of the defendant. The only parties interested in such a contract are the plaintiff and the insurer.'' (Citing cases.)

This court has reasoned similarly to the majority rule above expressed in *Perrott* v. *Shearer,* 17 Mich. 48. There an action of trespass was brought against

a sheriff because of his wrongful seizure and retention of plaintiff's goods, which were destroyed by fire while in the possession of the sheriff (defendant). Defendant there contended that it was competent for him to introduce evidence that plaintiff had received money for the loss of such goods from an insurer thereof, in mitigation of damages. The court said:

"It certainly strikes one, at first, as somewhat anomalous, that a party should be in position to legally recover of two different parties the full value of goods which he has lost; but we think the law warrants it in the present case, and that the defendant suffers no wrong by it. He is found to be a wrongdoer in seizing the goods, and he cannot relieve himself from responsibility to account for their full value, except by restoring them. He has no concern with any contract the plaintiff may have with any other party in regard to the goods, and his rights or liabilities can neither be increased nor diminished by the fact that such a contract exists. He has no equities as against the plaintiff which can entitle him, under any circumstances, to an assignment of the plaintiff's policies of insurance. The accidental destruction of the goods in his hands was one of the risks he ran when the trespass was committed, and we do not see how the law can relieve him from the consequences. * * * He (plaintiff) already has a right of action for the full value of the goods, and he does not give that away by taking a contract of insurance."

The rule in this case was approved in *Hagan* v. *Railroad Co.*, 86 Mich. 615, and in *Peter* v. *Railway Co.*, 121 Mich. 324 (46 L. R. A. 224, 80 Am. St. Rep. 500).

It therefore appears, at least by analogy, that we have been in accord with the majority rule hereinbefore stated. The charge of the court, in effect,

followed the rule adopted by the courts of Pennsylvania and Missouri, rather than the one of which we have herein expressed approval. It gave to defendant a more favorable construction than that to which it was entitled. Therefore, defendant cannot complain.

It is urged by defendant that the award of the jury was excessive. In view of the circumstances of the accident and the injuries received therefrom, we cannot say that it was excessive. *Garber* v. *Stone,* 259 Mich. 607.

Regarding the other questions raised by appellant, we find no ground for reversal. Therefore, the judgment of the lower court is affirmed, with costs to plaintiff.

NORTH, C. J., and FEAD, WIEST, BUTZEL, BUSHNELL, EDWARD M. SHARPE, and POTTER, JJ., concurred.