GORELICK v DEPARTMENT OF STATE HIGHWAYS

Docket No. 56566. Submitted January 6, 1983, at Lansing.—Decided July 19, 1983.

Plaintiff, Paul Gorelick, brought an action in the Court of Claims against defendant, State of Michigan and Michigan Department of State Highways and Transportation, seeking damages for injuries sustained as a result of the negligent maintenance of a highway, specifically the placement of a "pass with care" sign. The trial court, Stanley Everett, J., found in favor of the plaintiff and computed his damages to be $2,100,000. The court then ruled that the award should be reduced to $971,140 based on a finding that Ms. Linda Nascenzi, the driver of the other car involved in the accident and a non-party herein, was one-third negligent, to account for income tax which plaintiff might have to pay on his lost future earnings and to account for work-loss benefits which plaintiff had received from his insurer. Defendant appeals from the judgment in plaintiff's favor and plaintiff cross-appeals from the court's decision to reduce the award. *Held:*

1. The trial court acted properly in finding defendant liable

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5, 6] 7A Am Jur 2d, Automobiles and Highway Traffic §§ 232, 254.

[3] 5 Am Jur 2d, Appeal and Error § 839.

[4] 30 Am Jur 2d, Evidence § 1080.

[7] 57 Am Jur 2d, Negligence §§ 153, 199 *et seq.,* 219.
Foreseeability as an element of negligence and proximate cause. 100 ALR2d 942.

[8] 20 Am Jur 2d, Courts § 40.
31 Am Jur 2d, Expert and Opinion Evidence § 160.

[9] 8 Am Jur 2d, Automobiles and Highway Traffic § 1063.
Use of motion pictures as evidence. 62 ALR2d 686.

[10] 29 Am Jur 2d, Evidence § 442.

[11] 57 Am Jur 2d, Negligence §§ 191, 435.
Propriety and effect of jury's apportionment of damages as between tortfeasors jointly and severally liable. 46 ALR3d 801.

[12, 13] 22 Am Jur 2d, Damages §§ 26, 27, 53, 88.

[13] 7 Am Jur 2d, Automobile Insurance § 368.

[14] 22 Am Jur 2d, Damages § 206 *et seq.*

for negligent maintenance of the subject highway and properly made its assessment of damages at $2,100,000.

2. The defendant does in fact have a statutory duty to properly place "pass with care" signs. Such a sign is mandatory in nature and is a part of the improved portion of a highway. Such a sign falls within the definition of a "traffic control device".

3. The evidence was sufficient to support the factfinder's conclusion that the placement of the sign was causally related to Ms. Nascenzi's perception that conditions were safe for passing and in turn causally related to the accident which caused plaintiff's injuries. The accident was a natural, probable and foreseeable consequence of defendant's act of misplacing the sign.

4. The trial court's factual findings as to the credibility of the witnesses were neither incomplete nor clearly erroneous.

5. Defendant's duty in placing the sign included keeping the premises safe to guard against the foreseeable negligence of third parties. Defendant has a duty to anticipate dangers arising from the congruence of a defect in improved portions of the highway and the foreseeable negligence of highway users. There is no basis for any holding that the court's findings as to proximate cause were clearly erroneous.

6. The trial court did not err in viewing the scene of the accident or in admitting a motion picture into evidence solely to illustrate certain physical principles and not for the purpose of duplicating or recreating the accident. There was no abuse of discretion in regard to either issue.

7. The trial court properly allowed a post-trial amendment of the pleadings to conform to the proofs regarding plaintiff's damages.

8. The evidence was sufficient to support the trial court's finding that plaintiff suffered an aggravation of his pre-existing medical condition as a result of the accident.

9. The trial court erred in undertaking to reduce the damage award (1) by the proportion of Ms. Nascenzi's negligence, (2) by the amount of income tax which plaintiff might have to pay on his lost future earnings, and (3) by the amounts received by plaintiff from his insurer.

10. Plaintiff has the right to recover the entire judgment from defendant herein, even though defendant's responsibility for the accident has been adjudicated at less than 100%. The theory of joint and several liability was not affected by this state's adoption of the doctrine of comparative negligence.

11. Courts must disregard the income tax consequences in

fixing damages for lost future earning capacity resulting from personal injuries. Deductions for prospective taxes are only proper when specifically provided by a statute. No such statute applies here. In addition, the trial court lacked a factual basis for reducing plaintiff's award for prospective taxes, therefore, such a reduction was an error.

12. The trial court erred in failing to apply the collateral source rule when it deducted work-loss benefits which plaintiff had received from his insurer. Such rule may be applied when the state is the party defendant.

Affirmed as modified and remanded for entry of a judgment in favor of plaintiff for $2,100,000.

1. HIGHWAYS — PASS WITH CARE SIGNS — STATUTES.

The Department of State Highways has a statutory duty to properly place "pass with care" signs as part of the improved portion of a highway (MCL 691.1402; MSA 3.996[102]).

2. HIGHWAYS — PASS WITH CARE SIGNS — TRAFFIC CONTROL DEVICES.

A "pass with care" sign is a traffic control device within the meaning of the statute pertaining thereto; such a sign is mandatory in nature in that it serves to regulate a motorist's right to pass other cars (MCL 257.70; MSA 9.1870).

3. APPEAL — FINDINGS OF FACT — BENCH TRIAL.

A trial court's findings of fact may only be found to be clearly erroneous where the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.

4. EVIDENCE — PROVINCE OF FACTFINDER.

It is the province of the factfinder to weigh the evidence and to believe or disbelieve any testimony.

5. HIGHWAYS — DEPARTMENT OF STATE HIGHWAYS — PASS WITH CARE SIGNS — DUTY TO PLACE SIGNS.

The duty of the Department of State Highways in placing a "pass with care" sign includes keeping the premises safe to guard against the foreseeable negligence of third parties.

6. HIGHWAYS — DEPARTMENT OF STATE HIGHWAYS — DUTY TO ANTICIPATE DANGER.

The Department of State Highways has a duty to anticipate dangers arising from the congruence of a defect in improved portions of a highway and the foreseeable negligence of highway users (MCL 691.1402; MSA 3.996[102]).

7. NEGLIGENCE — INTERVENING NEGLIGENCE — FORESEEABILITY.

The intervening negligence of a third party does not supersede an original tortfeasor's negligence where the intervening force is reasonably foreseeable and the original act of negligence remains operative.

8. COURTS — VIEW OF SUBJECT SCENE — PRESENCE OF EXPERTS.

A court sitting as trier of fact has as much discretion to view the subject scene as would the jury; the factfinder may meet with a qualified expert at the subject scene for the purpose of receiving an explanation of the dimensions of the premises.

9. EVIDENCE — PHOTOGRAPHIC EVIDENCE — RECREATION OF ACCIDENT SCENE — ILLUSTRATION OF GENERAL PRINCIPLES.

A motion picture is not admissible in evidence unless it portrays conditions almost identical to those prevailing at the time of the accident itself where it is offered to recreate the scene of the accident; where a film is not offered for the purpose of duplicating or recreating an accident, but instead merely to illustrate certain general principles, differences in the surrounding conditions are less relevant and do not require the picture's exclusion.

10. EVIDENCE — PLEADING — AMENDMENT OF PLEADINGS — COURT RULES.

A trial court may properly allow a post-trial amendment of the pleadings to conform to the proofs where there is no surprise or prejudice resulting therefrom (GCR 1963, 118.3).

11. NEGLIGENCE — COMPARATIVE NEGLIGENCE — JOINT AND SEVERAL LIABILITY — CONTRIBUTION.

The doctrine of comparative negligence does not require an abandonment of joint and several liability which arises when the negligence of two or more parties concurs in producing a single, indivisible injury, even though there was no common duty, common design or concerted action; the amendment of the statute regarding pro-rata shares of tortfeasors preserved the right of contribution between joint tortfeasors and reaffirmed the fact that principles of joint and several liability have survived the adoption of comparative negligence (MCL 600.2925b; MSA 27A.2925[2]).

12. DAMAGES — PROSPECTIVE INCOME TAXES.

Courts must generally disregard the income tax consequences in fixing damages for lost future earning capacity resulting from personal injuries; deductions for prospective taxes are only proper where specifically provided for by statute; consideration

of the effect of taxes, if it is to be allowed, may only be allowed when based upon facts and expert opinion properly brought into evidence.

13. DAMAGES — PROSPECTIVE INCOME TAXES — INSURANCE CODE — MOTOR VEHICLES.

  The insurance code provision which allows the reduction of certain tort recoveries by the amount of taxes that would have been payable on account of income the injured person would have received if he had not been injured applies only to actions arising from the negligent ownership, maintenance, or use of a motor vehicle (MCL 500.3135[2][c]; MSA 24.13135[2][c]).

14. TORTS — DAMAGES — COLLATERAL SOURCE RULE.

  The collateral source rule provides that a plaintiff's award in a personal injury action must not be reduced by amounts received from an independent source such as an insurer; the policy underlying the rule is an effort to encourage citizens to purchase and maintain insurance for personal injuries; such policy is unaffected by factors such as the identity of the tortfeasor, therefore, there is no reason not to apply the rule where the state rather than a private tortfeasor is the party defendant.

*Pianin, Graber, & Paull, P.C.* (by *Michael P. Pianin* and *Samuel A. Graber),* and *Gromek, Bendure & Thomas* (by *Carl L. Gromek, Nancy L. Bosh* and *Daniel J. Wright),* of counsel, for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Carl K. Carlsen* and *Clive D. Gemmill,* Assistants Attorney General, and *George J. Platsis,* Special Assistant Attorney General, for defendant.

Before: ALLEN, P.J., and BRONSON and WAHLS, JJ.

BRONSON, J. Defendant appeals as of right from a judgment entered in favor of plaintiff, finding that defendant had been negligent in failing to

properly maintain a highway at the intersection of South Lapeer Road (M-24) and Kile Road. After reaching its verdict as to liability, the court computed plaintiff's damages at $2,100,000; however, the court ruled that several factors required it to reduce the award to $971,140. Plaintiff cross-appeals from the court's decision to reduce the award. We find no error in the court's determination of liability, but agree with plaintiff that the court erred in relying upon certain factors to reduce the damage award.

Defendant first contends that the court erred in finding that it had a duty to ensure the proper placement of a "pass with care" sign. According to defendant, such a sign is not an integral part of the improved portion of a highway within the meaning of MCL 691.1402; MSA 3.996(102); defendant characterizes such signs as being merely advisory or cautionary in nature, rather than mandatory traffic control devices such as stop signs, *cf. Lynes v St Joseph County Road Comm,* 29 Mich App 51, 58; 185 NW2d 111 (1970). We disagree. This Court has gone beyond a narrow definition of the "improved portion of the highway" proposed by defendant; the term embraces far more than the roadway, shoulder and mandatory signals such as stop signs. Several recent decisions have expressly included within the definition such "cautionary" or advisory devices as warning signs, *Greenleaf v Dep't of State Highways & Transportation,* 90 Mich App 277; 282 NW2d 805 (1979); *Salvati v Dep't of State Highways,* 92 Mich App 452; 285 NW2d 326 (1979), and guardrails, *Kurczewski v State Highway Comm,* 112 Mich App 544; 316 NW2d 484 (1982); *Hall v Dep't of State Highways,* 109 Mich App 592; 311 NW2d 813 (1981), *lv den* 413 Mich 942 (1982).

Even if, as defendant contends, a "pass with

care" sign is merely advisory in nature, such a sign falls within the definition of a "traffic control device" contained in MCL 257.70; MSA 9.1870:

" 'Traffic control devices' means all *signs,* signals, markings, and devices \* \* \* placed \* \* \* by authority of a public body \* \* \* for the purpose of regulating, *warning* or *guiding* traffic." (Emphasis added.)

We would go one step further and note that, despite defendant's assertions to the contrary, such a sign is in fact mandatory in nature in that it actually serves to regulate a motorist's right to pass other cars. Plaintiff points out in his brief that a "pass with care" sign not only guides traffic in advising motorists of conditions which may be safer and more conducive to passing, but that such a sign also denotes the end of a no-passing zone, thereby specifically permitting or inviting a motorist to pass. MCL 257.640; MSA 9.2340. We conclude that defendant does in fact have a statutory duty to properly place "pass with care" signs. Accordingly, there is no merit in defendant's argument that it had no duty to properly place the sign in question in the present case.

Defendant next raises two separate challenges to the trial court's finding of proximate cause. First, defendant urges that the improper placement of its sign could not even have been a "but for" cause of plaintiff's accident. Defendant insists that, at most, the sign could only have been advanced 30 or 40 feet. From this premise, defendant argues that this slight distance would not have given the motorists in the present case a significantly greater amount of time to pass safely. We disagree.

First, defendant relies heavily upon the testimony of its own expert that the sign was mis-

placed by only 30 feet; the trial court could properly have relied on the contrary testimony of plaintiff's expert that the sign was 90 to 95 feet out of place. More important, the trial court found that the issue at hand was not the amount of time the motorists might have had to pass once the decision was made to do so; instead, the crucial consideration was the sight distance open to the driver of the other car, Ms. Linda Nascenzi, at the time she first observed the "pass with care" sign. It was the latter factor which was essential in forming the basis for her decision to venture into the passing lane.

Plaintiff's expert produced evidence that given the placement of defendant's sign a person such as Nascenzi, whose line of vision was 3.5 feet above the ground, could see only 500 feet ahead; cars between 500 and 900 feet away were not visible at that point. This evidence is sufficient to support the factfinder's conclusion that the placement of the sign was causally related to Nascenzi's perception that conditions were safe for passing, and in turn causally related to the accident which caused plaintiff's injuries. The accident was a natural, probable, and foreseeable consequence of defendant's act of misplacing its sign, see *Clumfoot v St Clair Tunnel Co,* 221 Mich 113, 116; 190 NW 759 (1922).

The other aspect of defendant's appeal as to causation focuses upon the trial court's findings of fact as to this issue. According to defendant, the court's findings were both erroneous and incomplete, in that (1) the court made certain findings as to the credibility of witnesses, and (2) the court failed to make sufficient findings to show why the negligence of Nascenzi was not the sole proximate cause of the accident. In reviewing these conten-

tions, we are mindful of the Supreme Court's admonition in *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976), that a trial court's findings of fact may only be found to be clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.

We are unable to find clear error in the trial court's determinations as to the relative credibility of witness Mr. Leo Derderian, on the one hand, and Nascenzi, on the other. The court's findings reveal the factual basis for its decision that the lack of adequate clear sight distance at the point where the "pass with care" sign was located was a proximate cause of Nascenzi's decision to move into the passing lane. Nascenzi's testimony that she did not see plaintiff's car until the moment of impact was corroborated by the testimony of the driver of plaintiff's car, Dr. Marvin Jaffee. He also reported having seen the oncoming car only at the moment of impact.

Derderian, on the other hand, stated that Nascenzi was in the passing lane for a substantial period of time before encountering the oncoming car containing plaintiff. The trial court noted that Derderian's description of the topography at the point of Nascenzi's entry into the passing lane suggests that the latter must have travelled almost a quarter of a mile in the passing lane—a finding which would have been inconsistent with Derderian's own estimate that she had travelled only about 500 feet in that lane. Other factors support the trial court's finding that Derderian's testimony may have resulted from a faulty or incomplete memory of the accident. His deposition reveals that he did not recall certain rather basic aspects of the incident, such as the hour of the

day, whether the oncoming car containing plaintiff had its lights on, whether the car which Nascenzi attempted to pass was hauling a trailer, and for that matter, whether there were any "pass with care" signs at all in the area. Given the foregoing, we cannot question the court's findings concerning the relative credibility of Nascenzi and Derderian.

Defendant makes much of the evidence that Nascenzi might have been drinking while driving but fails to demonstrate how this aspect of her negligence operates to reduce the credibility of her testimony, as well as that of the driver of plaintiff's car, that neither driver saw the other until the moment of impact. We also note that it is the province of the factfinder to weigh evidence and to believe or disbelieve any testimony. *Hazen v Rockefeller,* 303 Mich 536, 547; 6 NW2d 770 (1942); *Vial v Vial,* 369 Mich 534; 120 NW2d 249 (1963).

The trial court adequately stated its reasons for disbelieving Derderian's account of what had taken place. The court also amply stated its reason for rejecting the testimony of defendant's expert, William Lebel, concerning the circumstances of the accident: that all of the expert testimony was based upon "very selective" and unproven assumptions which were not in evidence. In short, we find that the court's factual findings as to the credibility of witnesses were neither incomplete nor clearly erroneous.

Similarly, we reject defendant's claim that the trial court erred in refusing to find Nascenzi's negligence to have been the sole proximate cause of the accident. According to defendant, the court erred in failing to take into account the possibility that drivers such as Nascenzi might begin to pass shortly *before* the point where a "pass with care" sign is located. Defendant goes on to posit that this

was precisely what happened: that consistent with Derderian's testimony, Nascenzi pulled into the passing lane well ahead of the sign, as her car was still climbing the latter of two hills, and that Nascenzi's own negligence, rather than the placement of the sign, was the proximate cause of the accident. Despite our ruling, *supra,* that the trial court could properly reject the testimony in support of this theory, we are willing to assume *arguendo* that Nascenzi did in fact pull into the passing lane somewhat in advance of the sign. Nonetheless, we decline to find that this action served to break the causal link between defendant's negligence and plaintiff's injuries.

Defendant's duty in placing the sign included keeping the premises safe to guard against the foreseeable negligence of third parties, see, *e.g., Samson v Saginaw Professional Building, Inc,* 393 Mich 393; 224 NW2d 843 (1975); *Johnston v Harris,* 387 Mich 569, 573-575; 198 NW2d 409 (1972). This Court has also recognized that defendant has a duty to anticipate dangers arising from the congruence of a defect in improved portions of the highway, MCL 691.1402; MSA 3.996(102), and the foreseeable negligence of highway users, see, *e.g., Hall, supra,* pp 603-604; *Van Liere v State Highway Dep't,* 59 Mich App 133, 138; 229 NW2d 369 (1975). The intervening negligence of a third party does not supersede the original tortfeasor's negligence, so long as the intervening force is reasonably foreseeable, *Sivley v State Highway Dep't,* 32 Mich App 267, 269; 189 NW2d 507 (1971), and the original act of negligence remains operative, *Hall, supra.* Accordingly, the trial court did not err in observing that defendant's duty of care in placing signs included the duty of taking into account a highway user's foreseeable action of beginning to

pass after observing such a sign, but before actually reaching it. In turn, the court acted properly in making the foregoing observation a basis for its finding as to proximate cause. Particularly, given the lack of credible evidence that Nascenzi committed even this limited and foreseeable act of negligence, we conclude that there is no basis for any holding that the court's findings as to proximate cause were clearly erroneous.

Defendant next raises two procedural issues: (1) that the court erred as a matter of law in viewing the scene of the accident; and (2) that the court erred in admitting into evidence a motion picture simulating the accident. Neither of these issues warrants reversal. As to the court's decision to view the scene, we find no abuse of discretion. A court sitting as trier of facts has as much discretion to view the subject scene as would a jury. See 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 499; *Toussaint v Conta,* 292 Mich 366, 369; 290 NW 830 (1940). The factfinder may meet with a qualified expert at the subject scene for the purpose of receiving an explanation of the dimensions of the premises. *Wayne County Bd of Road Comm'rs v GLS Leasco,* 394 Mich 126, 140-141; 229 NW2d 797 (1975). The presence of the court stenographer to transcribe the communications between the expert and the court legitimizes the procedure of visiting the scene; the presence of the opposing party's counsel further serves to safeguard that party's right to ensure that the court receives a fair and unbiased presentation.

In the instant case, plaintiff's expert accompanied the trial court to the scene and used various distance markers to demonstrate that objects in the passing lane were not visible at certain distances from the point where Nascenzi pulled out

to pass. The court stenographer and defense counsel were present, in turn legitimizing the procedure and protecting defendant from prejudice. *Cf. Valentine v Malone,* 269 Mich 619; 257 NW 900 (1934), where the court's view of the scene was undertaken without notice to the parties or their attorneys and in their absence. We also note that defendant made no objection to the substance of the expert's presentation except to advise that the expert's figures and conclusions were only "approximations". Given the lack of demonstrable prejudice, we find that the court acted properly in allowing this presentation. If anything, the presentation was necessary to resolve conflicting testimony concerning sight distances open to each motorist.

There was similarly no error in the trial court's decision to admit a motion picture simulating the accident, despite the fact that there were noticeable differences between the conditions portrayed in the film and those prevailing at the time of the accident. Where motion pictures are offered to recreate the scene of an accident, they are not admissible unless they portray conditions almost identical to those prevailing at the time of the accident itself. *Green v General Motors Corp,* 104 Mich App 447, 449; 304 NW2d 600 (1981). On the other hand, where a film is not offered for the purpose of duplicating or recreating an accident, but instead merely to illustrate certain general principles, differences in surrounding conditions are less relevant and do not require the film's exclusion. *Id.*

In the present case, plaintiff offered the film solely to illustrate certain physical principles; there was no effort to actually recreate the accident. Accordingly, we attach little significance to

the fact that at the time the film was taken: (1) the cameras were located along the shoulder rather than being on the roadway, as the motorists had been; (2) the weather was cloudy, rather than clear as on the night of the accident; and (3) the time of day was afternoon, rather than dusk as on the night of the accident. These variations in conditions would have been significant if the motion picture were designed to reproduce the conditions of visibility at the time of the accident. However, they have little to do with "the amount of time (oncoming) cars disappear from view" at the intersection, the sole matter which, according to plaintiff's offer of proof, the film proposed to illustrate. The trial court specifically found that the film was not intended to recreate the scene as it appeared to the motorists from the roadway; the court instead observed that it was a "close enough representation" of conditions and sight distances along the roadway to serve as a useful and relevant piece of evidence. We conclude that there was no abuse of discretion as to this issue.

Defendant's final contention on appeal is that the trial court erred in its determination of plaintiff's damages. Specifically, defendant urges that the court clearly erred in finding that plaintiff suffered an aggravation of his pre-existing medical condition (multiple sclerosis) as a result of the accident. Defendant makes much of the fact that plaintiff failed to plead aggravation of his medical condition until his pre-trial statement, over 3-1/2 years after filing his complaint. We attach no significance to the delay in pleading this matter. Defendant had actual notice of this aspect of plaintiff's claim for damages well before trial. Defendant was apparently fully prepared to litigate the issue and has made no showing whatsoever that it

has been prejudiced by the admission of evidence as to this subject. *Cf. Ben P Fyke & Sons v Gunter Co,* 390 Mich 649; 213 NW2d 134 (1973). Under the circumstances, and absent a showing of surprise or prejudice, we believe that the court acted properly in allowing a post-trial amendment of the pleadings to conform to the proofs, *Woodrow v Johns,* 61 Mich App 255, 266; 232 NW2d 688 (1975); *Fitzgerald v Bixler,* 368 Mich 160; 117 NW2d 328 (1962); GCR 1963, 118.3, 301.

We also find that the evidence was sufficient to support the court's findings as to this issue. Several doctors who had examined plaintiff both before and after the accident gave testimony describing the change in his condition. Most, if not all, agreed that the accident had caused his formerly "benign" condition of multiple sclerosis to become "malignant". Despite the trial court's findings that plaintiff had been "less than candid" with respect to certain aspects of his claim, the court was not bound to reject as incredible all of plaintiff's testimony regarding his condition. Moreover, the medical testimony corroborated plaintiff's testimony regarding his post-accident condition, and provided substantial independent support for plaintiff's position that the accident aggravated his illness. As a result, we defer to the trial court's findings of fact as to this issue.

The issues raised in plaintiff's cross-appeal relate exclusively to the trial court's award of damages. We agree with plaintiff that the trial court erred in relying upon certain factors to reduce its award.

First, plaintiff protests the trial court's decision to reduce his award by one-third, based upon the court's finding that Nascenzi was one-third responsible for the accident. Although certain members

of this Court have in the past advocated adoption of a system of comparative negligence among joint tortfeasors, see, *e.g., Reed v St Clair Rubber Co,* 118 Mich App 1, 11-14; 324 NW2d 512 (1982) (BRONSON, J., *concurring),* see, also, *American Motorcycle Ass'n v Superior Court of Los Angeles County,* 20 Cal 3d 578; 146 Cal Rptr 182; 578 P2d 899 (Cal, 1978) (Clark, J., *dissenting),* and Fleming, *Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated With American Motorcycle Association v Superior Court,* 30 Hastings L J 1465, 1482-1487 (1979), this Court is bound by the recent Supreme Court decision in *Mayhew v Berrien County Rd Comm,* 414 Mich 399; 326 NW2d 366 (1982). Although *Mayhew, supra,* is nominally distinguishable in that it involved a situation where the non-party joint tortfeasor had settled with the plaintiff, the policies underlying *Mayhew* are applicable here:

"[N]umerous difficulties would be presented if we were to allow the (trier of fact) to apportion damages among all tortfeasors, (including non-parties). It would mean that the (non-party) tortfeasor's liability would be assessed without anyone adequately representing that interest. It would put the plaintiff in a unique trial situation. The plaintiff would not only have to advocate that he was not at fault, he would have to convince the jury that the non-party was only minimally at fault. Otherwise, there might be too great a percentage of fault attributed to the non-party, thus reducing the plaintiff's recovery." 414 Mich 412.

Several recent decisions of this Court have applied similar reasoning to hold that the theory of joint and several liability was not affected by this state's adoption of comparative negligence doctrines in *Placek v Sterling Heights,* 405 Mich 638;

275 NW2d 511 (1979); see, for example, *Anderson v Harry's Army Surplus, Inc,* 117 Mich App 601; 324 NW2d 96 (1982); *Ferdig v Melitta, Inc,* 115 Mich App 340; 320 NW2d 369 (1982); *Johnston v Billot,* 109 Mich App 578; 311 NW2d 808 (1981); *Bacon v Dep't of State Highways,* 115 Mich App 382; 320 NW2d 681 (1982). In *Edwards v Joblinski,* 108 Mich App 371; 310 NW2d 385 (1981), a case decided more than two years after *Placek, supra,* this Court reaffirmed the principle that where two or more persons concur in producing a single indivisible injury, such persons are jointly and severally liable, even if they do not act in concert. 108 Mich App 376. The Court specifically applied that principle to a highway maintenance case similar to the present one, where the negligence of one tortfeasor—a road user—was found to have been foreseeable to the other tortfeasor (the highway authority). The Court found that "an innocent plaintiff should be fully compensated even if it meant that one negligent defendant had to be responsible for the total loss to compensate for the insolvency of another negligent defendant". 108 Mich App 377. Accord, *Weeks v Feltner,* 99 Mich App 392, 395; 297 NW2d 678 (1980).

The policies underlying the foregoing decisions have been reaffirmed by the recent amendment to MCL 600.2925b; MSA 27A.2925(2), effective April 28, 1982. That section now provides in part:

"In determining the pro rata shares of tortfeasors in the entire liability as *between themselves only and without affecting the rights of the injured party to a joint and several judgment:*

"(a) Their relative degrees of fault shall be considered." (Emphasis added.)

The amended statute preserves a right of contribu-

tion between joint tortfeasors, but the emphasized language reaffirms that principles of joint and several liability have survived *Placek, supra.* In short, the foregoing language requires this Court to recognize plaintiff's right to recover the entire judgment from defendant herein, even though defendant's responsibility for the accident has been adjudicated as less than 100%.

In concluding discussion of this aspect of the cross-appeal, we note that defendant has cited no authority for its position that under MCL 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* the state can never be a joint tortfeasor with another person, or that the state had never "consented" to pay for the torts of other persons. In fact, the results in *Edwards, supra,* and *Bacon, supra,* and most notably, *Mayhew, supra,* compel the contrary conclusion. In each case, highway maintenance authorities were found to have been joint tortfeasors responsible to an injured party, despite the involvement of other private tortfeasors. Absent the citation of some authority favoring defendant's position, this Court has no choice but to conclude that the trial court erred in reducing the award by one-third based on Nascenzi's negligence. The present case should be remanded for a recomputation of damages free of this error.

The trial court also erred by reducing the award for lost future earnings by the amount representing income taxes which might have to be paid on those earnings. Generally, in fixing damages for lost future earning capacity resulting from personal injuries, courts must disregard the income tax consequences, Anno: *Propriety of taking income tax into consideration in fixing damages in personal injury or death action,* 63 ALR2d 1393, 1395-1396. The decisions indicate that deductions

for prospective taxes are only proper where specifically provided for by statute, *Miller v State Farm Mutual Automobile Ins Co,* 410 Mich 538, 562-565; 302 NW2d 537 (1981). *Longworth v Dep't of State Highways,* 110 Mich App 771, 783-784; 315 NW2d 135 (1981). Defendant's assertions to the contrary, MCL 500.3135(2)(c); MSA 24.13135(2)(c) does not apply to authorize the deduction of prospective taxes here. Even if, as defendant contends, that section could in fact authorize the reduction of tort recoveries in certain cases, the section applies only to actions arising from the negligent ownership, maintenance, or use of a motor vehicle. The present action is not one based upon ownership, maintenance, or use of the defendant's motor vehicle. Instead, the present action arises from defendant's negligent maintenance of a highway, a breach of an entirely distinct statutory duty, MCL 691.1402; MSA 3.996(102). In *Edwards v Joblinski, supra,* this Court held that the liability of a county road commission does not arise from the ownership, maintenance, or use of a motor vehicle, but instead from the statutory duty to maintain highways in reasonable repair. The present case is almost identical. Accordingly, we find no basis for applying MCL 500.3135(2)(c); MSA 24.13135(2)(c) to require deduction of prospective taxes from plaintiff's award of damages.

Defendant has not pointed to any other statute which might have authorized the court's deduction of prospective taxes, but even if it had, the court still would have erred in making such a deduction, because defendant failed to meet its burden of introducing competent expert testimony concerning plaintiff's prospective tax status, *O'Loughlin v Detroit & Mackinac R Co,* 22 Mich App 146; 177 NW2d 430 (1970). See *Longworth, supra,* where this Court observed:

"The trial court based its calculation of plaintiff Wheeler Longworth's future earnings on his expected *gross* income, making no deduction for the effect of taxes. Defendant contends that an award of damages for future earnings must be based on *net* earnings and that therefore this case must be remanded to the trial court for recomputation of damages.

"Although no Michigan court has decided this question, federal courts applying Michigan law have held that gross earnings are the proper measure. See, *e.g., Payne v Baltimore & Ohio R Co,* 309 F2d 546 (CA 6, 1962), *cert den* 374 US 827; 83 S Ct 1865; 10 L Ed 2d 1051 (1963); *Nice v Chesapeake & Ohio R Co,* 305 F Supp 1167, 1180 (WD Mich, 1969). We find it unnecessary to address this issue at the present time, since defendant introduced no evidence of plaintiff's expected tax status. As this Court stated in *O'Loughlin v Detroit & Mackinac R Co,* 22 Mich App 146, 156; 177 NW2d 430 (1970), 'Consideration of the effect of taxes, if it is to be allowed, may only be allowed when based upon facts and expert opinion properly brought into evidence.' Once a plaintiff has introduced evidence of expected gross income, the defendant has the burden of producing evidence in support of any deduction for taxes, if such a deduction is ever permitted." 110 Mich App 783. (Emphasis in original.)

Even when the trial court offered defendant an opportunity to present such evidence, defendant chose not to, offering instead only raw tax tables whose prospective applicability to plaintiff was open to question. The court lacked a factual basis for reducing plaintiff's award, and should have declined to do so. We conclude that the reduction of the award for prospective taxes was error, *Longworth, supra.*

Finally, we agree with plaintiff that the trial court erred in failing to apply the collateral source rule, *Tebo v Havlik,* 109 Mich App 413, 415; 311 NW2d 372 (1981). The court deducted $11,000 in work-loss benefits which plaintiff had received

from his insurer. The collateral source rule provides that a plaintiff's award must not be reduced by amounts received from an independent source such as an insurer. The policy underlying the rule is an effort to encourage citizens to purchase and maintain insurance for personal injuries, Anno: *Collateral Source Rule: Injured Person's Hospitalization or Medical Insurance as Affecting Damages Recoverable,* 77 ALR3d 415, 419. Defendant's assertions to the contrary, the policy underlying the rule is unaffected by factors such as the identity of the tortfeasor. In other words, there is no basis for defendant's assertion that the collateral source rule should not be applied merely because the state rather than a private tortfeasor is the party defendant. Similarly, defendant's arguments for abolition of the collateral source rule are based more upon policy considerations than case authority, and should be directed towards the Legislature, rather than this Court.

In summary, the trial court acted properly in finding defendant liable for negligent maintenance of the subject highway, and properly made its assessment of damages ($2,100,000). However, the court erred in undertaking to reduce that award: (1) by the proportion of a third party's negligence, (2) by the amount of income tax which plaintiff might have to pay on his lost future earnings, and (3) by the amounts received by plaintiff from his insurer.

The matter should be remanded for entry of a judgment in favor of plaintiff, in the amount of damages originally assessed by the court, $2,100,-000. Except for removal of the improper deductions, the trial court's judgment is affirmed.

Affirmed as modified, and remanded for proceedings consistent with this opinion.